LA CORRESPONDENCIA DE PUERTO RICO, INC., demandante y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado. LA MISMA *v.* EL MISMO.

Núms. 8221 y 8222.—*Sometidos:* Mayo 7, 1941. *Resueltos:* Mayo 23, 1941.

*Enrique Igaravídez,* abogado de la apelante; *Hon. Procurador General George A. Malcolm* y *M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La apelante instó estos dos pleitos para recobrar ciertas cantidades que alega haber pagado bajo protesta por concepto de contribuciones sobre ingresos y cuotas de indemnizaciones a obreros, respectivamente. Las demandas en cada pleito son sustancialmente iguales, con excepción de las sumas reclamadas y del concepto en que se hizo el pago, refiriéndose la del 8221 a contribuciones sobre ingresos y la del 8222 a cuotas de indemnizaciones a obreros. Se alegó en dichas demandas que la demandante es una corporación doméstica organizada el 25 de junio de 1935 y dedicada a la publicación del periódico "La Correspondencia de Puerto Rico". Que la demandante es una entidad distinta e independiente de la que con el mismo nombre estuvo registrada en Secretaría Ejecutiva de Puerto Rico hasta el 14 de junio de 1935 en que fué disuelta y que esta última publicó el periódico indicado hasta el 18 de enero de 1935 en que toda su maquinaria,

instalación, etc., fué adquirida por don Francisco Zeno en satisfacción de la sentencia que obtuvo como cesionario del demandante en el caso del *Banco Comercial de Puerto Rico v. La Correspondencia de Puerto Rico, Inc., et al.* Que desde el 18 de enero de 1935 hasta el 25 de junio siguiente, en que quedó constituída la corporación ahora demandante, el Sr. Zeno continuó publicando por su propia cuenta el aludido periódico hasta que en 25 de junio, con efecto retroactivo al primero de marzo de 1935, arrendó la indicada maquinaria a la nueva corporación. Que ésta publicó para el Departamento de Hacienda anuncios de subasta en procedimientos de apremio en cobro de contribuciones, ascendiendo la deuda de dicho Departamento por el concepto indicado a la suma de $7,789. Que la corporación anterior, es decir, la disuelta el 14 de junio de 1935, adeudaba a El Pueblo de Puerto Rico la cantidad de $674.20 por concepto de contribuciones sobre ingresos correspondientes al año 1924 y asimismo adeudaba $690.69 por cuotas de indemnizaciones a obreros correspondientes a los años fiscales 1927–28, 1929–30, 1930–31 y 1931–32. Que a pesar de que la corporación anterior era una entidad distinta e independiente de la demandante y que esta última nada adeudaba al Tesoro de Puerto Rico, el entonces Tesorero, Sr. Sancho Bonet, al pagar a la demandante la indicada cantidad por concepto de publicación de anuncios el 19 de septiembre de 1936, retuvo $690.69 y $674.20 respectivamente, "contra el manifiesto deseo de la demandante," alegando que dichas cantidades pertenecían a la extinta corporación y que las retenía para aplicarlas a su deuda por contribuciones sobre ingresos y cuotas de indemnizaciones a obreros, respectivamente. Que el tesorero demandado se negó a reintegrar dichas sumas a la demandante, así como a consignar en los recibos entregados, acreditativos del pago de las mismas, el hecho de que la demandante las había pagado bajo protesta y que por esa razón no acompañaba a las demandas dichos recibos con constancia de la forma del pago. Termina la

demandante en cada caso con súplica de que se condene al Tesorero de Puerto Rico a devolver las sumas anteriormente indicadas, con los intereses correspondientes y las costas.

Desestimadas en cada caso las excepciones previas de insuficiencia de hechos determinantes de causa de acción, contestó el demandado aceptando unos hechos y negando otros, y alegando afirmativamente, entre otras defensas, que la demandante pagó voluntariamente las sumas reclamadas, que las demandas no aducen hechos constitutivos de causa de acción, y que la corte carecía de jurisdicción para conocer de uno y otro pleito.

■■ Consideraremos en primer término el recurso núm. 8221, que se refiere a la devolución de la cantidad pagada por concepto de contribución sobre ingresos.

El Pueblo de Puerto Rico no puede ser demandado sin su consentimiento. De suerte que al consentir, puede imponer las condiciones que estime convenientes y haciendo uso de ese derecho ha dispuesto que en los pleitos sobre devolución de contribuciones sobre ingresos no sólo precisa que la contribución haya sido pagada bajo protesta, como se exige en todos los casos sobre devolución de contribuciones, si que también que el contribuyente antes de recurrir a los tribunales haya agotado el remedio administrativo que le ofrece la ley, interponiendo recurso de alzada para ante la Junta de Revisión e Igualamiento, a fin de que se revise por dicha junta la decisión o actuación del Tesorero. Mientras ese requisito no haya sido cumplido, los tribunales de justicia no tendrán jurisdicción para conocer del pleito sobre devolución de contribuciones sobre ingresos, por exigirlo así la ley a virtud de la cual el Pueblo de Puerto Rico prestó su consentimiento para ser demandado en esa clase de pleitos. Véase la sección 76–B de la Ley de Contribuciones sobre Ingresos y especialmente el caso de *P. R. Fertilizer Co. v. Sancho Bonet, Tesorero,* 54 D.P.R. 677, en el que se transcribe íntegramente la opinión emitida por el Tribunal Supremo de Estados Unidos en el reciente caso de *Sancho Bonet,*

*Tesorero,* v. *Yabucoa Sugar Co.*, (1939) 306 U.S. 505, que confirma la reiterada jurisprudencia de este tribunal interpretativa de la referida sección 76–B.

Ni de la demanda ni de la prueba resulta en manera alguna que la apelante haya recurrido ante la Junta de Revisión e Igualamiento antes de pagar la contribución sobre ingresos. Por el contrario, de su alegato se desprende que la apelante no cumplió con ese requisito legal. Siendo ello así, no es necesario, a los efectos del recurso 8221 que consideramos, determinar por ahora si el pago se hizo o no bajo protesta. Basta que no se haya cumplido con el requisito indicado para que la corte sentenciadora careciese de jurisdicción para conocer de dicho pleito.

Pasemos ahora al recurso 8222, que se contrae a la devolución de lo pagado por concepto de cuotas de indemnizaciones a obreros.

Este recurso se rige por la Ley núm. 8, "Disponiendo el pago de contribuciones bajo protesta; estableciendo un procedimiento para autorizar el cobro y devolución de las mismas, etc.", aprobada el 19 de abril de 1927 (pág. 123). Esa ley, por la cual El Pueblo de Puerto Rico prestó su consentimiento para ser demandado en pleitos sobre devolución de contribuciones de cualquier otra clase que no sea sobre ingresos—que, como hemos visto, se rigen por una ley especial—, en ninguna de sus secciones exige que el contribuyente tenga que recurrir a la Junta de Revisión e Igualamiento para poder demandar en los tribunales, pero sí exige, al igual que la ley de contribuciones sobre ingresos, que el pago se haya hecho bajo protesta. Por consiguiente precisa determinar, a los efectos de este recurso (8222), si en realidad la demandante, antes de establecer este pleito, dió cumplimiento a ese requisito jurisdiccional.

La demanda no lo alega. La única alegación que contiene a ese respecto es la siguiente frase, que aparece en su párrafo octavo, a saber:

". . . y el Tesorero de Puerto Rico, el 19 de septiembre de 1936, contra el manifiesto deseo de la demandante, retuvo dicho importe. . ."

No es ése el pago bajo protesta que requiere la ley. La inmensa mayoría de los contribuyentes, aquí y en todas partes, pagan las contribuciones contra sus deseos y sólo porque saben que de no hacerlo, el Estado empleará los medios coercitivos de que dispone para obligar al pago. La citada ley núm. 8 determina en qué consistirá el pago bajo protesta, al prescribir:

"Sección 1.—Cuando algún contribuyente creyere que no debe pagar cualquier contribución o parte de ella, estará no obstante obligado a pagarla en su totalidad, a requerimiento del colector de rentas internas de su distrito, o del funcionario encargado de la recaudación, y *si desea establecer alguna reclamación, al efectuar el pago pedirá a dicho colector o funcionario recaudador, que consigne su protesta al dorso del recibo* indicando específicamente si ésta se refiere al todo o parte de la contribución que ha sido pagada bajo protesta, y precisando el montante de lo impugnado. Dicha nota será firmada por el contribuyente y por el colector o funcionario encargado de la recaudación."

En el caso de *Jiménez* v. *Domenech,* 47 D.P.R. 481, en que se trataba de un pleito sobre devolución de cierto impuesto pagado a virtud de la Ley núm. 19, "Para reglamentar la venta de café extranjero, puro o mezclado con café de Puerto Rico, y para proveer fondos con qué pagar los gastos que ocasione tal reglamentación, y para otros fines," aprobada el 19 de abril de 1928 (pág. 147), la alegación de la demanda relativa al pago bajo protesta decía así:

"3. Que el demandante pagó y entregó al demandado dicha suma, involuntariamente y bajo violencia e intimidación consistentes en la amenaza hecha al demandante por el demandado y sus agentes de ser el demandante procesado criminalmente y de serle destruído su negocio de acuerdo con la sección 22 de dicha ley, de no proceder el demandante a efectuar el dicho pago y a entregar dicha suma, y alega el demandante que dichos pagos y entrega fueron hechos por el demandante al demandado con el sólo objeto de evitar que se le

envolviera en tal proceso y que le fuera destruído su negocio, el cual consistía al tiempo de efectuar el pago y entrega de dicha suma en la compra y venta de café de Puerto Rico y del extranjero.''

Este tribunal, al confirmar la sentencia de la corte inferior que desestimó la demanda a virtud de excepción previa de falta de hechos constitutivos de causa de acción, sostuvo que la misma no alegaba que el pago hubiese sido hecho bajo protesta, y la Corte de Circuito de Apelaciones para el Primer Circuito, confirmando a su vez la de este tribunal, refiriéndose al pago bajo protesta, dijo:

''La demanda suficientemente alega que los pagos en cuestión no fueron hechos voluntariamente, sino que lo fueron bajo violencia o intimidación. (Citas.) No alega que se hiciese protesta alguna al tiempo de comprar las estampillas o que se notificase al demandado en relación con la compra o uso de ellas, de cualquier reclamación al efecto de que las mismas eran ilegalmente exigidas y que se le haría responsable de las sumas pagadas por ellas.

'' *      *      *      *      *      *      *

''La cuestión a resolver es si en tales condiciones aduce hechos la demanda.

'' *      *      *      *      *      *      *

''La insuperable dificultad en el caso del demandante es que, asumiendo que la acción proceda, como él sostiene, no tiene derecho a una sentencia sin alegar y probar que el pago en cuestión fué hecho bajo protesta o con notificación al funcionario que lo recibió (el tesorero), de que se le haría responsable de su devolución. Ésta es la regla establecida en los Estados Unidos, a menos que se varíe por estatuto (citas). Ésa también es la ley en Puerto Rico. *Guerra* v. *El Tesorero de P. R.*, 8 D.P.R. 292, 321.'' *Jiménez* v. *Domenech*, 80 F. (2) 767, 768.

A nuestro juicio la insuficiencia de la alegación es manifiesta.

Veamos ahora lo que resulta de la prueba.

La evidencia, en lo que respecta al pago bajo protesta, es, a lo sumo, contradictoria. El testigo principal de la demandante, Sr. Zeno, que fué quien verificó el pago, entre otras cosas declaró:

"Entonces el Tesorero . . . me llamó allá y me dice: 'Zeno, aquí yo tengo este dinero, pero yo quiero cobrar, nosotros tenemos que cobrar la contribución que debe la vieja corporación.' Entonces el testigo le dijo: 'Bueno, mire, Tesorero, este dinero, estos cheques que usted tiene ahí corresponden casi todos a la nueva corporación. Los de la vieja corporación usted puede descontarlos, pero los de la nueva corporación yo quiero discutirlo con usted. Estamos dispuestos, o yo, personalmente, pero para no tener diferencias con Tesorería, estoy dispuesto a hacer un arreglo, y voy a decirle aquí a la corte (esto declaró el testigo textualmente) que yo le propuse al Tesorero y a mi me parece que él en principio aceptaba un arreglo, o sea yo le dije: 'Yo no le voy a discutir a usted la contribución sobre la propiedad porque yo personalmente he adquirido la propiedad y de acuerdo con la ley la contribución sigue la propiedad a la nueva corporación. Y en cuanto a la contribución sobre indemnizaciones y otras sobre *Income Tax*,' le dije, 'yo estoy dispuesto a un arreglo con usted, a pagarle la de indemnizaciones aunque creo que es injusto porque ésta es una deuda que le debe Tesorería a la nueva corporación y no a la otra, pero yo voy a aceptar esto y usted reconoce que nosotros tenemos derecho a cobrar esta cantidad de la nueva corporación que usted nos ha retenido, a mi juicio indebidamente, por concepto de *Income Tax* de la vieja corporación.'

"     *          *          *          *          *          *          *

"Que el Tesorero entonces llamó al Sr. Juliá que tenía los cheques en su poder; que cuando el Sr. Juliá oyó la proposición que le hacía el Sr. Zeno al Tesorero, dijo el Sr. Juliá: 'El Sr. Zeno tendrá que protestar los cheques o escribir la protesta,' y que entonces dijo el Tesorero: 'No es necesario porque eso lo resolveré yo.' El Sr. Juliá entonces entregó al señor Zeno los cheques en su misma mano y el Sr. Zeno los firmó.''

El Sr. José A. Fremaint, único testigo del demandado, declaró sobre el mismo particular lo siguiente:

"El testigo declara que a su mesa fueron varios cheques enviados por el Tesorero de Puerto Rico a favor de La Correspondencia; que entonces el testigo llamó por teléfono al señor Zeno y le dijo que allí tenía cheques por $7,000, que pasara por allí. Que el señor Zeno fué a la oficina del testigo; que no sabe si antes estuvo en la del Tesorero o no; que le dijo al señor Zeno lo siguiente: 'Bueno, señor Zeno, La Correspondencia tiene aquí $7,000 y La Correspondencia de Puerto Rico debe al Pueblo de Puerto Rico tanta cantidad

por obreros e *Income Tax':* que entonces el señor Zeno dijo: 'Bueno yo voy a pagar eso porque necesito ese dinero,' y entonces se lamentó de que ésa era una contribución que él no debía pagar, porque él creía que no tenía la obligación de pagar; que el testigo le dijo al señor Zeno, 'Bueno, por qué no hace una cosa, por qué no hace el pago bajo protesta, lo consignamos aquí?' Y el testigo dijo: 'No, yo no quiero pagar bajo protesta porque yo estoy en buena amistad con el Tesorero de Puerto Rico y eso lo podemos arreglar.' Que entonces el señor Zeno endosó los cheques de las contribuciones y cogió el resto. Que eran cheques girados por el Gobierno de Puerto Rico a favor de La Correspondencia de Puerto Rico.''

La corte dirimió el conflicto de la prueba a favor del demandado; como puede verse de los siguientes párrafos de su opinión:

"No aparece en ninguna alegación de las demandas que el pago se hiciera bajo protesta. Tampoco aparece de la evidencia practicada, salvo aquella parte de la declaración del señor Zeno en que dice que el Tesorero le dijo que escribiera una carta protestando, como efectivamente lo hizo; pero ésa no es la protesta que dice la Ley. La evidencia demuestra que el señor Zeno se dirigió a la oficina del Tesorero de Puerto Rico y allí amistosa y amigablemente recibió unos cheques de éste, que los endosó, y más tarde, en la quietud de su oficina, recapacitó que no había hecho el pago bajo protesta y entonces escribió la carta protestando.

"      *       *       *       *       *       *       *

"Es tan claro en este caso que el pago fué voluntariamente hecho, que el propio Tesorero de Puerto Rico, en carta de 31 de marzo de 1937 y suscrita por F. Ramírez Vega, subtesorero, niega de plano el que el pago fuese hecho bajo protesta.''

A nuestro juicio la corte inferior no erró al apreciar la prueba sobre este extremo, ni hay alegación alguna, ni mucho menos prueba, de que al así apreciarla actuara movida por pasión, prejuicio o parcialidad

Convenimos con la corte inferior en que la evidencia no demuestra que el pago fué hecho bajo protesta. Para que así fuese, hubiera sido necesario que en el acto de endosar y devolver la demandante los cheques en cuestión, consignase su protesta, o por lo menos, como se dijo por la Corte de

Circuito en el caso de *Jiménez* v. *Domenech,* supra, notificase al funcionario a quien hizo el pago, que lo hacía bajo protesta y que le exigiría su devolución. Pero la demandante no lo hizo así. Sólo se conformó con manifestar al funcionario, que discutiría la justicia del caso con el tesorero en su oportunidad. Ése no es el pago bajo protesta a que se refiere la ley.

La carta suscrita por el Sr. Zeno, que menciona el juez inferior en su opinión, y en la que dicho testigo intentó consignar la protesta, a nuestro juicio no es suficiente, pues como dice el juez inferior, no se escribió en el momento del pago, sino algún tiempo después de haberse hecho éste.

Siendo ello así, ¿a qué continuar discutiendo otras cuestiones suscitadas por la apelante, si siempre tendríamos que llegar a la inevitable conclusión de que la corte carecía de jurisdicción para conocer de estos casos, por no haberse recurrido en el primero de ellos para ante la Junta de Revisión e Igualamiento, y por no haberse hecho en ambos el pago bajo protesta, requisitos éstos imprescindibles para que dichos pleitos pudieran prosperar?

*Procede, por lo expuesto, la confirmación de las sentencias apeladas.*